UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEO RAY SHIVERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-01365-DDN |
| | ) |
| CHERYL YOUNG, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Leo Ray Shivers for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In this case, plaintiff has failed to submit an inmate account statement as required by 28 U.S.C. § 1915(a)(2), stating that the jail has to request it from the company that is contracted to run the canteen. (Docket No. 3 at 2). Nevertheless, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his inmate account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating

that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Washington County Jail in Potosi, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Records Officers Cheryl Young and E. Moore as defendants. (Docket No. 1 at 2-3). Both are sued in their individual capacities only. The complaint contains allegations that plaintiff has been held in custody beyond the maximum release dates of his sentences, in violation of his constitutional rights.

In the "Statement of Claim," plaintiff asserts that on May 1, 2020, he "was released from the Missouri Department of Corrections on parole." (Docket No. 1 at 4). For reasons he does not

provide, plaintiff was returned to the Department of Corrections on January 8, 2021. Shortly thereafter, plaintiff "received a new copy of [his] face sheet." The calculations on the "new" face sheet were not the same as on his prior face sheet, dated August 29, 2019. In particular, the maximum release dates for his three cases were different, and purportedly added time to his sentences. (Docket No. 1 at 4-5).

The August 29, 2019 face sheet shows that plaintiff's first case is resisting arrest, for which he was sentenced to four years' imprisonment. (Docket No. 1 at 4). The calculation start date is May 2, 2016, and the maximum release date May 1, 2020. The second case is leaving the scene of a motor vehicle accident, for which plaintiff received three years' imprisonment. (Docket No. 1 at 5). The calculation start date is January 1, 2019, and the maximum release date December 31, 2021. The third case is escape or attempted escape, for which plaintiff received three years' imprisonment. The calculation start date is December 31, 2020, and the maximum release date December 31, 2023.

According to plaintiff, at some point between May 1, 2020 and May 5, 2020, "the records offices for the Missouri Probation and Parole [Board]" and the Missouri Department of Corrections changed his face sheet, adding "days, weeks, months an[d] years to all 3 of [his] sentences." These changes were all reflected on a new face sheet dated May 5, 2020. (Docket No. 1 at 5-6).

On the newer face sheet, the calculation start date for his first case is May 1, 2020, and the maximum release date is September 1, 2021. (Docket No. 1 at 6). The calculation date for his second case is September 1, 2021, while the maximum release date is May 1, 2023. Finally, the calculation start date for his third case is May 1, 2023, while the maximum release date is April 30, 2026.

4

After setting out these differences, plaintiff provides further details as to the consequences of these changes. To begin, he states that he was sent to the Eastern Reception, Diagnostic and Correctional Center on July 14, 2016. (Docket No. 1 at 7). Even before then, he "started the sentence for" resisting arrest on May 2, 2016, with a maximum release date of May 1, 2020. Plaintiff asserts that he served two years and eight months on that sentence, before it "was deferred on January 1, 2019," at which time he "started his sentence for leaving [the] scene of [a] motor vehicle accident." The maximum release date for plaintiff's leaving the scene of an accident conviction was December 31, 2021. He served one year and four months of this sentence before being released on parole on May 1, 2020. (Docket No. 1 at 7-8).

As previously noted, plaintiff was returned to the Department of Corrections on January 8, 2021, and received a new copy of his face sheet. (Docket No. 1 at 8). Upon receiving the new face sheet, he noticed that it had changed from before.

Regarding plaintiff's sentence for resisting arrest, the start date changed from May 2, 2016 to May 1, 2020, while the maximum release date went from May 1, 2020 to September 1, 2021. According to plaintiff, this meant that he had been "kept past his maximum release discharge date by 1 year[,] 4 months[,] an[d] 1 day." He alleges that this amounts to "over detention" and "false imprisonment," and that he should have been discharged on May 1, 2020.

Concerning his sentence for leaving the scene of an accident, plaintiff's start date changed from January 1, 2019 to September 1, 2021, and his maximum discharge date was moved from December 31, 2021 to May 1, 2023. (Docket No. 1 at 9). As such, plaintiff asserts that he has been held eleven months and nineteen days past his maximum discharge date, resulting in "false imprisonment."

With regard to his sentence for escape, plaintiff states that he should already have started serving his sentence as of December 31, 2020. However, due to the Department of Corrections and the Board of Probation and Parole, this sentence has not started.

The bottom line, according to plaintiff, is that he has been kept past his maximum discharge date on his first two sentences, and has not even started serving the third. (Docket No. 1 at 11). More specifically, he alleges that the Department of Corrections and the Board of Probation and Parole has added one year, four months, and one day to his first sentence, and eleven months and nineteen days to the second. (Docket No. 1 at 10). The escape sentence has not yet begun, because "the sentence for leaving [the] scene of [a] motor vehicle accident [is still] active," even though it should not be. (Docket No. 1 at 11-12).

Plaintiff pays especially close attention to his sentence for leaving the scene of an accident, pointing out that the August 29, 2019 face sheet had this particular sentence as "active." (Docket No. 1 at 12). On the May 5, 2020 face sheet, the sentence status had changed to "parole release." (Docket No. 1 at 13). The status changed once more on the January 28, 2021 face sheet, which gave a status of "future." Plaintiff insists this "can't be, because [he] had already started it on January 1, 2019 an[d] did 1 year[,] 4 months…on it, an[d] was paroled out on it." A subsequent face sheet dated April 27, 2021 had an "active" sentence status, with a maximum release date of May 1, 2023. (Docket No. 1 at 14). Plaintiff claims that the maximum release date cannot be on May 1, 2023, because that would be one year, four months, and one day past the maximum discharge date indicated on his August 29, 2019 face sheet. He thus concludes that his sentence for leaving the scene of an accident should have been discharged on December 31, 2021. (Docket No. 1 at 14-15).

These recalculations occurred "some time between" May 1 and May 5, 2020, when plaintiff "left [the] Mobile Department of Corrections."[1] (Docket No. 1 at 16). Plaintiff asserts that he never received "an update from anyone" while on parole in 2020, and that he did not find out that his maximum discharge dates had been changed until January 28, 2021. He contends that these changes were made "at the records office in the Missouri Department of Corrections an[d] the Missouri Board of Probation and Parole."

Due to these alleged recalculations, plaintiff states he was falsely imprisoned on his resisting arrest conviction, because he "was made to do an extra" one year, four months, and one day on his four-year sentence. (Docket No. 1 at 17). Likewise, he claims false imprisonment with regard to his leaving the scene of an accident conviction, because he has been made to do four years, four months, and one day on a three-year sentence. In particular, plaintiff complains that "this sentence is still active" even though it started on January 1, 2019.

With regard to Officer Young, plaintiff alleges that Young "failed to do their job." (Docket No. 1 at 19). At the very least, he asserts that Officer Young "knew how to pursue the parties or agencies that could resolve the issues of [his] maximum discharge dates an[d] start dates." Plaintiff states that Officer Young "harmed [him] by not contacting the parties or agencies that could have resolved the issues an[d] discharged [him] on the correct dates." He also accuses her of over-calculating his maximum discharge dates, and of failing to "fix what was done wrong or pursue the parties or agencies that could resolve the issues."

As to Officer Moore, plaintiff claims that Moore "failed to do the same thing as defendant Cheryl Young," and failed "to fix or pursue the parties or agencies that could resolve the issues." (Docket No. 1 at 20). Thus, he asserts that both defendants acted with deliberate indifference.

---

[1] It appears that plaintiff is referring to the Moberly Correctional Center.

7

Plaintiff further states that both Officers Young and Moore had knowledge of his circumstances because of a grievance he filed in February of 2021, and to which they responded on March 5, 2021. According to plaintiff, in their response, Officer Young and Officer Moore told him "that no change will be made to [the] face sheet."

Based on these facts, plaintiff states that he has suffered cruel and unusual punishment, that defendants have been deliberately indifferent, that he has been deprived of due process of law, that he has been deprived of liberty, and that he has been over-detained. (Docket No. 1 at 21). He asserts that "defendants failed to [do] their part to timely release [him]…once the legal basis to incarcerate [him] had expired." (Docket No. 1 at 22). Plaintiff also contends that both Officer Young and Officer Moor "were charged with the responsibility of examining prisoner's records for the purpose…of determining whether and when the prisoners were entitled to be released." (Docket No. 1 at 29).

Plaintiff is also upset that the records office at the Moberly Correctional Center changed all of his sentence calculations when he was released on parole, and did not give him notice. (Docket No. 1 at 22-23). In addition, he believes that he "should have had the opportunity to administratively challenge [the] determination in the changes of the dates," but "he was not given that opportunity." (Docket No. 1 at 26).

Attached to the complaint are seven separate exhibits. The Court has reviewed these exhibits and will treat them as part of the pleadings.[2] The first exhibit is a face sheet dated August 29, 2019. (Docket No. 1-5). The second is a face sheet dated May 5, 2020. (Docket No. 1-6). The

---

[2] *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

8

third is a face sheet dated January 28, 2021. (Docket No. 1-7). The fourth is a face sheet dated April 27, 2021. (Docket No. 1-8). The fifth is a face sheet dated September 7, 2021. (Docket No. 1-9). The sixth is an interoffice communication from Officers Young and Moore, in which they go through plaintiff's sentence calculations, and explain to him why his start dates and maximum discharge dates are correct. (Docket No. 1-10). Finally, the last exhibit is an informal resolution response in which plaintiff is advised that the records department reviewed his sentence, that it found and corrected a mistake, and that his maximum discharge dates for his three sentences are September 1, 2021, May 1, 2023, and April 30, 2026 respectively. (Docket No. 1-11).

As a result of his claimed over detention, plaintiff states that he has suffered a loss of liberty, as well as emotional distress. (Docket No. 1 at 31). He seeks an injunctive order to force the "Missouri Department of Corrections Records Office to discharge [him] on the correct discharge date of December 31, 2021 of the crime of leaving the scene of a motor vehicle accident." (Docket No. 1 at 37). Plaintiff also requests compensatory damages. (Docket No. 1 at 37-38).

**Discussion**

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that his original sentence calculations were changed upon his return from parole. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court has determined that the complaint is subject to dismissal. However, plaintiff will be directed to file an amended complaint.

9

### A. Deficiencies in Complaint

Plaintiff's complaint is deficient and subject to dismissal because he has not adequately stated individual capacity claims against defendants Young and Moore. Individual liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, plaintiff has not presented facts demonstrating the personal responsibility of Officer Young and Officer Moore for violating his constitutional rights. In the complaint, plaintiff asserts that both Officers Young and Moore either miscalculated his sentences themselves, or failed to correct calculations made by others. Regardless of the theory he pursues, he has failed to present any facts establishing that the recalculation of his start dates and maximum discharge dates was improper or violative of the constitution.

Most of plaintiff's seventy-two-page complaint is spent repeatedly asserting that his sentence calculations changed from the time he was released on parole, and then returned to the Department of Corrections. His facts undoubtedly establish that the dates on his August 29, 2019 face sheet are different from the dates on his May 5, 2020 face sheet. What he has not done,

10

however, is present any facts showing this recalculation to be incorrect. To be sure, plaintiff claims his constitutional rights have been violated, but he advances no factual allegations to support that conclusion. "While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

Not only has plaintiff failed to provide facts indicating that the recalculation of his sentences was wrongful, his own exhibits – which are made part of the pleadings – belie the contention. The informal resolution response, for instance, states that the "records department [has] reviewed [his] sentence," corrected two mistakes, and affirms the maximum discharge dates that appear on his May 5, 2020 face sheet. (Docket No. 1-11). Further explanation is provided by a memorandum sent to plaintiff and apparently authored by defendants. (Docket No. 1-10). In that memorandum, the calculation of plaintiff's start dates, conditional release dates, and maximum discharge dates are set forth in detail. From this document, it appears that the recalculation of plaintiff's sentences occurred due to deferred time being added back to his sentence upon his return from parole.

In short, plaintiff's facts show that the calculation of his start dates and maximum discharge dates changed, but fails to support the proposition that these changes violated his constitutional rights, or were in any way wrongful. Meanwhile, the exhibits plaintiff has attached show that the recalculations of which he complains are correct. For these reasons, plaintiff has not stated individual capacity claims against Officer Young and Officer Moore.

Rather than dismissing outright, the Court will give plaintiff the opportunity to file an amended complaint, according to the instructions set forth below. Plaintiff must follow these instructions.

**B. Amendment Instructions**

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible.

In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed.

Plaintiff should put his case number in the appropriate location on the upper right-hand section of the first page. He should then fill out the complaint form in its entirety, and ensure that it is signed.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion for appointment of counsel. (Docket No. 2). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his

claims to the Court. Additionally, the Court has determined that this action is subject to dismissal, and has directed plaintiff to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court form within **thirty (30) days** of the date of this order, in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court form within **thirty (30) days** of the date of this order, in accordance with the instructions set for above, this action shall be dismissed without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon receipt of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 16th day of March, 2023.

/s/ David D. Noce
DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE